UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

BROOKE MARIE BENEDETTO,

                Plaintiff,

      -against-                              6:19-CV-994 (LEK/ATB)

NEW YORK STATE OFFICE OF
CHILDREN AND FAMILY SERVICES,

                Defendant.

## MEMORANDUM-DECISION AND ORDER

## I.    INTRODUCTION

Brooke Benedetto brings claims under both 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"), and the New York State Human Rights Law, Exec. Law §§ 290, *et seq.* ("NYSHRL"). Dkt. No. 1 ("Complaint") ¶¶ 1, 15. Plaintiff asserts, under both statutes, a sex-based disparate treatment claim, a hostile work environment claim, and a retaliation claim against the New York State Office of Children and Family Services. Before the Court is Defendant's Motion to Dismiss, Dkt. No. 9 ("Motion to Dismiss"), which the Court grants in part and denies in part.

## II.    BACKGROUND

Plaintiff is a female employee who began working for Defendant on August 18, 2016. Compl. ¶ 17. At all times relevant to this case, Plaintiff was a "Youth Aide III," a non-supervisory position, at Defendant's Taberg Residential Center facility ("Taberg"). Id. ¶¶ 10, 16.

On May 26, 2018, Courtney Haas, a female supervisory employee of Defendant, confronted Plaintiff in Taberg's parking lot. Id. ¶ 18. The confrontation occurred while Haas was on-shift and Plaintiff was off-shift. Dkt. No. 1-1 ("New York State Department of Human Rights ("NYSDHR") Determination") at 4. Haas accused Plaintiff of sending a private Facebook

message to Haas' husband, an allegation Plaintiff states is "categorically false." Compl. ¶ 19.

When Haas confronted Plaintiff, Haas called Plaintiff a "whore," "slut," and "bitch." Id. ¶ 18.

After Plaintiff denied sending the Facebook message to Haas' husband, Haas called Plaintiff a

"liar." Id. ¶ 19. After the exchange, Plaintiff attempted to walk back into Taberg, but "Haas

physically cut Plaintiff off and blocked Plaintiff from entering the facility with her body." Id. ¶

24. Haas continued to yell at Plaintiff: "you bang all the staff!" and "you are a whore and

everyone knows, even the kids!" Id. ¶ 28.

When Plaintiff entered the facility, her superior, Mr. Haughton, informed her that he and

Facility Director Christopher Bolinski were aware of what had transpired and had prior

knowledge that this confrontation would occur. Id. ¶ 30. Plaintiff asked why Bolinski did not

stop the confrontation, to which Bolinski responded: "Where else is she going to confront you if

she doesn't have contact with you outside of work?" Id. ¶ 34. Plaintiff also alleges that two of

her co-workers, Jamie Murphy and Mitchell Sadlowski, were aware that the events would occur

and watched them occur from inside Taberg. Id. ¶ 36.

Plaintiff "immediately"[1] filed a "Workplace Violence Report Form" and submitted it to

Defendant's department of Equal Opportunity and Diversity Development ("EODD"). Id. ¶ 32.

EODD did not investigate, but rather sent the matter back to Bolinski to investigate. Id. ¶ 40. As

a result, Haas received a counseling memo[2] from Defendant. Id. ¶ 46.

---

[1] It appears that Plaintiff took this action on the same day as the incident with Haas (May 26, 2018). Compl. ¶¶ 32, 33.

[2] The NYSDHR Determination states "Haas was issued a counseling memo per the collective bargaining agreement for probationary employees . . . . [P]robationary employees can only be given a counseling memo or termination; no notice of discipline can be issued." NYSDHR Determination at 4.

Plaintiff did not believe this to be an appropriate response and, as a result, filed a charge of sex-based discrimination with the NYSDHR on July 16, 2018. Compl. ¶¶ 40, 41. The NYSDHR investigated the administrative complaint and issued a Determination and Order After Investigation on December 28, 2018, finding probable cause to believe that unlawful, sex-based discrimination had occurred. NYSDHR Determination at 2. On May 13, 2019, the EEOC issued a Dismissal and Notice of Rights allowing for Plaintiff to bring this action within 90 days. Dkt. No. 1-2 ("EEOC Dismissal")[3] at 2. On August 12, 2019, Plaintiff filed the present case against Defendant. Compl..

Plaintiff alleges that, subsequent to her filing a complaint of discrimination with EODD, she was assigned "less-desirable shifts"; "shifts during which she is forced into close proximity with Haas"; and "shifts during which she is forced to have Haas as her supervisor." Compl. ¶¶ 43, 44.

## III.   LEGAL STANDARD

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter . . . 'to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678 (citing Twombly, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "Put another way, a claim is plausible if it is supported by 'enough fact[s] to raise a reasonable expectation

---

[3]  The EEOC dismissal reads: "The EEOC is closing its file on the charge for the following reason[:] . . . Charging Party wishes to pursue matter in Federal District Court." EEOC Dismissal at 2.

that discovery will reveal evidence of [the alleged misconduct].'" <u>Pare v. Valet Park of Am., Inc.</u>, No. 19-CV-206, 2020 WL 495038, at *4 (N.D.N.Y. Jan. 30, 2020) (Kahn, J.) (alterations in original) (quoting <u>Twombly</u>, 550 U.S. at 556). "In assessing whether this standard has been met, courts 'must accept all allegations in the complaint as true and draw all inferences in the light most favorable to the non-moving party[]. . . .'" <u>Charles Ramsey Co., Inc. v. Fabtech-NY LLC</u>, No. 18-CV-546, 2020 WL 352614, at *9 (N.D.N.Y. Jan. 21, 2020) (Kahn, J.) (alteration in original) (quoting <u>In re NYSE Specialists Sec. Litig.</u>, 503 F.3d 89, 95 (2d Cir. 2007)).

## IV.    DISCUSSION

The Court addresses the Title VII and NYSHRL claims together. <u>See</u> <u>Salamon v. Our Lady of Victory Hosp.</u>, 514 F.3d 217, 226 (2d Cir. 2008) ("We typically treat Title VII and NYSHRL discrimination claims as analytically identical, applying the same standard of proof to both claims."). For the reasons stated below, the Court grants Defendant's motion to dismiss Plaintiff's sex-based disparate treatment claims but denies the motion with respect to Plaintiff's hostile work environment and retaliation claims.

### A.  Disparate Treatment

"To establish a prima facie case of employment discrimination under Title VII, a plaintiff must show that (1) [s]he is a member of a protected class; (2) [s]he was qualified for the position [s]he held; (3) [s]he suffered an adverse employment action; and (4) the adverse employment action took place under circumstances giving rise to an inference of discrimination." <u>Chang v. City of New York Dep't for the Aging</u>, No. 11-CV-7062, 2012 U.S. Dist. LEXIS 50436, at *12–13 (S.D.N.Y. Apr. 10, 2012) (internal quotation marks omitted). However, "to survive a motion to dismiss, plaintiffs alleging employment discrimination need not plead a prima facie case." <u>Henry v. NYC Health & Hosp. Corp.</u>, 18 F. Supp. 3d 396, 404 (S.D.N.Y 2014). "Rather, an

employment discrimination complaint must include only a short plain statement of the claim . . .
[that] give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon
which it rests." Jackson v. N.Y. State Dep't of Labor, 709 F. Supp. 2d 218, 227 (S.D.N.Y. 2010)
(internal quotation marks omitted). Even though Plaintiff need not plead a prima facie case, "the
elements of a prima facie case 'provide an outline of what is necessary to render a plaintiff's . . .
claims for relief plausible.'" Henry, 18 F. Supp. 3d, at 404 (quoting Kassman v. KPMG LLP,
925 F. Supp. 2d 453, 461 (S.D.N.Y 2013)).

The first two prongs of Plaintiff's prima facie case are not at issue here. Dkt. No. 9-1
("Defendant's Memorandum") at 6. As for the third and fourth elements, Defendant claims that
Plaintiff has not pled an adverse employment action and that "there are no[] facts showing that
the alleged misconduct was 'because of' the Plaintiff's gender." Id. at 6–7. To qualify as an
adverse employment action, "an action must cause 'a materially adverse change in the terms and
conditions of the employment.'" Henry, 18 F. Supp. 3d at 404 (quoting Mathirampuzha v. Potter,
548 F.3d 70, 78 (2d Cir. 2008)). The Henry court further explained:

> To be materially adverse, a change in working conditions must be
> more disruptive than a mere inconvenience or an alteration of job
> responsibilities. Examples of such a change include termination of
> employment, a demotion evidenced by a decrease in wage or salary,
> a less distinguished title, a material loss of benefits,
> significantly diminished material responsibilities, or other indices
> unique to a particular situation.

Id. (quoting Mathirampuzha, 548 F.3d at 78).

Under the third prong, Plaintiff appears to argue that the adverse employment action is
receiving "less desirable shifts." Dkt. No. 13 ("Plaintiff's Memorandum") at 12.[4] "Under certain

---

[4] Plaintiff's Memorandum is not a model of clarity on this point. Plaintiff appears to
argue either that the alleged harassment and retaliation themselves constitute adverse
employment actions, or that the adverse employment action is being assigned to different shifts.

circumstances, the receipt of undesirable assignments may rise to the level of an adverse employment action." Henry, 18. F. Supp. 3d at 406; see also Feingold v. New York, 336 F.3d 138, 152–53 (2d Cir. 2004) (plaintiff's receipt of "disproportionately heavy workload" constituted a materially adverse employment action). However, as stated above, without a materially adverse change, simply receiving less desirable shifts is not an adverse employment action. See e.g., Smalls v. Allstate Ins. Co., 396 F. Supp. 2d 364, 370 (S.D.N.Y. 2005) ("[R]eceiving unfavorable schedules or work assignments . . . do[es] not rise to the level of [an] [adverse] []employment action . . . because it does not have a material impact on the terms and conditions of the Plaintiff's employment."). Because Plaintiff has failed to allege facts indicating that her receipt of less desirable shifts constituted a materially adverse change in working conditions, Defendant's motion to dismiss Plaintiff's disparate treatment claims under Title VII and NYSHRL is granted. However, the Court notes that leave to amend a complaint should be given freely. See Fed. R. Civ. P. 15(a). Based on this fact, the Court will provide Plaintiff leave to amend her pleadings to include additional factual allegations regarding an adverse employment action. Plaintiff shall file the amended complaint within 30 days of the date of this order, and failure to do so will result in a dismissal of this claim with prejudice.

---

Id. The Court advises Plaintiff that "[t]hough claims challenging disparate treatment, *quid pro quo* sexual harassment, and hostile work environment are all claims of gender discrimination, they are distinct causes of action governed by different analytical standards." See Desouza v. Office of Children & Family Servs., No. 18-CV-2463, 2019 WL 2477796, at *4 (E.D.N.Y. June 12, 2019). The Court thus will not find that there was an adverse employment action based simply on Plaintiff's allegations supporting harassment or retaliation claims. Nor, for the reasons stated below, are vague allegations of "less desirable shifts" sufficient to establish an adverse employment action at this stage. To the extent that Plaintiff intends to assert a distinct disparate treatment claim, Plaintiff will be granted the opportunity to amend to clarify this matter. See infra.

### B.  Hostile Work Environment

To establish a hostile work environment claim under Title VII, "a plaintiff must allege facts to plausibly 'show that the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe and pervasive to alter conditions of the victim's employment and create an abusive work environment.'" Erno v. N.Y. State Office of Info. Tech. Servs., No. 19-CV-1457, 2020 U.S. Dist. LEXIS 91258, at *18–19 (N.D.N.Y. May 26, 2020). "The Supreme Court has held that a work environment's hostility should be assessed based on the totality of the circumstances." Patane v. Clark, 508 F.3d 106, 113 (2d Cir. 2007) (internal quotation marks omitted). A court can consider any of the following factors in assessing the work environment's hostility: "(1) the frequency of the discriminatory conduct; (2) its severity; (3) whether it is threatening and humiliating, or a mere offensive utterance; and (4) whether it unreasonably interferes with an employee's work performance." Id. (internal quotation marks omitted).

"Ultimately, to avoid dismissal under FRCP 12(b)(6), a plaintiff need only plead facts sufficient to support the conclusion that she [or he] was faced with 'harassment . . . of such quality or quantity that a reasonable employee would find the conditions of her [or his] employment altered for the worse.'" Erno, 2020 U.S. Dist. LEXIS 91258, at *20 (quoting Patane, 508 F.3d at 113). Courts have "cautioned against setting the bar too high" when reviewing hostile work environment claims under Rule 12(b)(6). Terry v. Ashcroft, 336 F.3d 128, 148 (2d Cir. 2003). "Ultimately, '[t]he question of whether a work environment is sufficiently hostile to violate Title VII is one of fact.'" Erno, 2020 U.S. Dist. LEXIS 91258, at *25–26 (quoting Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 75 (2d Cir. 2001)).

Defendant argues that Plaintiff has not alleged sufficiently severe or pervasive harassment to survive a motion to dismiss. Def.'s Mem. at 11–12. The Court disagrees. It seems clear that the confrontation with Haas has altered Plaintiff's employment for the worse. Plaintiff was confronted by Haas and verbally attacked with gender-based slurs while being watched by her superiors. Compl. ¶¶ 18, 22, 30. After this occurred, Plaintiff filed a Workplace Violence Report Form. Id. ¶ 32. Rather than fire Haas, Defendant only issued her a "counseling memo." Id. ¶ 46; NYSDHR Determination at 4. While the initial interaction between Haas and Plaintiff may not have been severe enough to plead a hostile work environment claim, see Kotcher v. Rosa and Sullivan Appliance Ctr., Inc., 957 F.2d 59, 62 (2d Cir. 1992) (noting that isolated acts of harassment do not warrant Title VII relief), Defendant's follow-up response pushes Plaintiff's allegation into the realm of the plausible. In particular, because Defendant assigned Plaintiff to shifts in which she worked under Haas, Plaintiff has adequately pled that she was subjected to a hostile work environment. See Lent v. CCNH, Inc., No. 13-CV-942, 2015 WL 3463433, at *13 (N.D.N.Y. Jun. 1, 2015) (stating that working on the same shift as one's harasser "go[es] far beyond merely offensive conduct and [is] sufficient for a reasonable person to find her work environment abusive and hostile in violation of Title VII").

There are sufficient facts in the Complaint to state a gender-based hostile work environment claim based on Plaintiff's allegations that she was verbally attacked by Haas and then given "less-desirable shifts and shifts during which she [was] forced to have Haas as her supervisor." Compl. ¶¶ 18, 44; see Erno, 2020 U.S. Dist. LEXIS 91258, at *25–26. As a result, the Court denies Defendant's motion to dismiss Plaintiff's Title VII and NYSHRL hostile work environment claims.

### C. Retaliation

For a retaliation claim to survive a motion to dismiss, a plaintiff must plausibly allege: (1) "participation in a protected activity known to the defendant"; (2) "an employment action disadvantaging the plaintiff"; and (3) "a causal connection between the protected activity and the adverse employment action." Feingold, 336 F.3d at 156 (internal quotation marks omitted); see also 42 U.S.C. § 2000e-3(a).

"A plaintiff engages in 'protected activity' when she . . . makes a charge of discrimination[.]" Lent, 2015 WL 3463433, at *16. Here, Plaintiff has plausibly alleged that she engaged in a protected activity on May 26, 2018—the day of the confrontation with Haas—by filing a Workplace Violence Report Form and submitting it to EODD. Compl. ¶ 32.

"The Supreme Court has held that in the context of a Title VII retaliation claim, an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 90 (2d Cir. 2015) (quoting Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 57 (2006)). The alleged retaliatory and adverse employment actions include "knowingly giving [Plaintiff] less-desirable shifts and shifts during which [Plaintiff] is forced to have Haas as her supervisor." Compl. ¶ 44. In particular, being forced to work under Haas, whose conduct forms the basis of Plaintiff's complaints, could well dissuade Plaintiff from making a charge of discrimination. See Erno, 2020 U.S. Dist. LEXIS 91258, at *28 (stating that "continued assignment of Plaintiff to the same projects as" plaintiff's manager and alleged harasser was sufficient to allege retaliation at the motion to dismiss stage)

As for causation, a plaintiff must plausibly allege a connection between the adverse employment action and her engagement in protected activity. See 42 U.S.C. § 2000e-3(a). "A

retaliatory purpose can be shown indirectly by timing." <u>Vega</u>, 801 F.3d at 90. Although the Second Circuit "has not drawn a bright line defining, for the purposes of a prima facie case, the outer limits beyond which a temporal relationship is too attenuated to establish causation, we have previously held that five months is not too long to find the causal relationship." <u>Gorzynski v. JetBlue Airways Corp.</u>, 596 F.3d 93, 110 (2d Cir. 2010). The retaliation consists of Defendant "knowingly giving [Plaintiff] less-desirable shifts and shifts during which [Plaintiff] is forced to have Haas as her supervisor." Compl. ¶ 44. Plaintiff does not clearly state when the retaliation began; however, the alleged retaliation is detailed in the NYSDHR Determination, which was released on July 16, 2018. NYSDHR Determination at 2, 4. ("[R]espondent has allowed [Haas] to supervise [Plaintiff] on shift since the incident"). But because the retaliation was included in the NYSDHR report the retaliation itself must have begun prior to July 16, 2018. July 16, 2018 is clearly within five months of Plaintiff's filing a complaint of discrimination with the EEOD, <u>see Gorzynski</u>, 596 F.3d at 110, and therefore meets the pleading standard for causation, <u>see also Quinn v. Green Tree Credit Corp.</u>, 159 F.3d 759, 769 (2d Cir. 1998) (finding that the causal connection requirement was satisfied because the plaintiff's discharge came less than two months after one complaint).

These facts are sufficient to state a retaliation claim at this stage. The Court therefore denies Defendant's motion to dismiss Plaintiff's retaliation claims under both Title VII and the NYSHRL.

V.    **CONCLUSION**

Accordingly, it is hereby:

**ORDERED**, that Defendant's Motion to Dismiss is **GRANTED in part**. Plaintiff's Title VII sex-based disparate treatment claim and Plaintiff's NYSHRL sex-based disparate treatment

claim are **DISMISSED without prejudice and with leave to amend**. Plaintiff must file an amended complaint consistent with this opinion within 30 days; and it is further

**ORDERED**, that Defendant's Motion to Dismiss is otherwise **DENIED**; and it is further

**ORDERED**, that the Clerk shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:        July 20, 2020
              Albany, New York

Lawrence E. Kahn
Senior U.S. District Judge